### SARASOHN v. MILES et al.

(Supreme Court, Appellate Division, First Department. June 8, 1900.)

MONEY RECEIVED—LIABILITY OF AGENTS OF SELLER OF PROPERTY—FRAUD.

A purchaser negotiated for property through an agent. The agent stated to the purchaser, in the presence and hearing of the seller's agents, that to consummate the sale it would be necessary to pay the nephews of the seller certain money to secure their consent. The agents of the seller

gave a receipt for the money paid for the nephews, which provided for its return if the owner failed to give good title. The seller paid his agents a commission for effecting the sale. The representations made by the purchaser's agent as to the necessity of paying money to secure the nephews' consent were false. The buyer's agent and the seller's agents divided the money so paid among themselves. *Held*, that the purchaser can recover the money so paid the seller's agents in an action against them for money had and received.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term, New York county.

Action by Kasryel H. Sarasohn against William Miles, Jr., and another, for money had and received. Judgment for plaintiff, and defendants appeal. Affirmed.

Argued before PATTERSON, P. J., and HATCH, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Abram Kling, for appellants.

Abraham H. Sarasohn, for respondent.

HATCH, J. The testimony, we think, authorized the submission of this case to the jury upon the precise theory and charge upon which it was submitted. While it is true that the plaintiff had his negotiations for the purchase of the property with Livingstone, yet it is also true that, after the statement was made by Livingstone that it would be necessary to pay the nephews of the owners a thousand dollars through the defendants as agents of the owner, the plaintiff, Livingstone, and Helfer met for the purpose of consummating the arrangement, and at that time, and in the presence of Helfer, who sat at the table when the conversation was had, Livingstone stated in detail the circumstances which rendered necessary the payment of a thousand dollars in order to get the nephews to consent to the sale. Presumably, Helfer heard the conversation; for, when the plaintiff suggested as to what would be the result if the owner was not able to sign the deed, Helfer said: "I guaranty you. I will give you a receipt for it." This receipt was produced at the trial, and was in terms for $775, money to be returned if the owner did not give good title, and was signed by the defendants; and Livingstone stated at the same time, in the defendants' presence, that plaintiff would have to give the money to the boys, evidently meaning that the defendants would give it to the nephews, and in several forms the plaintiff reiterates this statement upon the occasion of the interview when he gave the money to the defendants. And further he states: "Mr. Helfer did not tell me that I ought to get a receipt for $775. I asked for it. I said, 'If you give that money to the boys, and in two or three months, at the time of taking the deed, Mrs. McCauley will not be able to sign the contract, where shall I get my money?' One of the gentlemen said, 'Suppose I guaranty you the money.' I asked for a receipt, and he gave me a receipt." And when the defendants took the money it was said that it was to go to the boys.

It is suggested that the representation was made exclusively by Livingstone, and that the plaintiff relied upon him. The plaintiff so testified; but when Livingstone made the representations it was in the presence of the defendants, as the evidence clearly shows, and

as the result of such statement the plaintiff paid the money to the defendants at the time they were made. The representation of Livingstone, therefore, became the representation of the defendants as well as Livingstone's; and, when the plaintiff testified that he relied upon the representations of Livingstone, it follows, as a legal conclusion, that they were clearly the representations of the defendants, as they were present and heard them, acquiesced therein, and received the benefits derived therefrom. The evidence, therefore, established the representation as the representation of the defendants, and of reliance thereon by the plaintiff, sufficient, at least, to uphold the verdict.

It is suggested that only one of the nephews was called to testify that he received none of the money, and therefore that it does not appear but that the money was paid to the other; but the testimony of the defendant Helfer is that the money was divided between Livingstone and the defendants, although the defendants were paid a commission for effecting the sale by the owner. The evidence in this respect was sufficient to establish a conspiracy between Livingstone and the defendants, and the proof, without contradiction, establishes that they got and divided $775 as the fruits of the false representations. The verdict of the jury has established that the representation under which the money was received was false. The case, therefore, as presented, shows that $775 was successfully extracted from the plaintiff by a successful fraud, and it ought not to receive the sanction of the court.

So far as the pleading was concerned, whether it be treated as an action for false and fraudulent representation, or for money had and received, is of little consequence. The pleading is certainly good for money had and received, and this is sufficient to support the judgment. The motion to compel an election was properly denied when made, and, as it was not renewed, no legal error resulted. Tuthill v. Skidmore, 124 N. Y. 148, 26 N. E. 348.

The judgment should be affirmed, with costs.

PATTERSON, P. J., and RUMSEY, J., concur.

INGRAHAM, J. I think that the verdict was entirely unsupported by the evidence. There is no question but that the plaintiff paid his money voluntarily, in pursuance of an arrangement made with Livingstone, whom he had employed to purchase this property, and, to recover it from these defendants, the plaintiff must prove that they made to him false representations, upon which he relied, and by which he was induced to pay to the defendants the money which he seeks to recover. No fraudulent representations were made by either of these defendants. Livingstone was the plaintiff's representative, and, if the plaintiff's story is true, is the one who made the representations, and the one who defrauded him. Plaintiff expressly testified that he relied upon the statements of Livingstone, and stated:

"I do not think I ever spoke with Miles and Helfer, because I had my full confidence in Mr. Livingstone that he would not cheat me. Mr. Helfer took the money, but by the table was said that money had to go to the boys. That was said by Mr. Livingstone by the table. That was said by Mr. Livingstone.

I do not remember whether Mr. Miles or Mr. Helfer said anything about the boys. I will say Mr. Livingstone did. I am the one who told Mr. Livingstone to go ahead and try to get this house. * * * I was only satisfied to give the money because I relied on what Livingstone told me in regard to the nephews. I was satisfied to pay the money on account that I have full confidence and that I am very intimate with Mr. Livingstone since twenty years. What Mr. Livingstone told me I thought it was true."

In the face of this testimony, I do not see how this can be any claim against the defendants on the ground of their fraud. Plaintiff made arrangements with Livingstone, based upon representations made by Livingstone, and upon which he relied, and, in carrying out that arrangement made with Livingstone, paid to the defendants this sum of money. Defendants made no representations to him, and thus plaintiff relied upon no representations made by them, and there is not the slightest evidence to show that the defendants knew the arrangement that was made was based upon false representations made by Livingstone. The whole charge against the defendants was that, when Livingstone stated to the plaintiff that this money was to go to other persons, one of these defendants was present. There is nothing to show that the defendants heard the statement, or adopted it, or understood that the plaintiff relied upon it when he paid the money. They had nothing to do with the arrangement between plaintiff and Livingstone, and were in no way responsible to the plaintiff for representations made to him by his own agent, and nothing from which it could be inferred that the payment was based upon that statement. There is no evidence by which these defendants would be charged with making representations that were false, and upon which the plaintiff relied, or with any connection with the fraud practiced by Livingstone upon the plaintiff by which he was induced to part with this sum of money. There is also no evidence that the statement was false. One of the nephews was not examined.

The verdict being without evidence to support it, the motion for a new trial should have been granted.

McLAUGHLIN, J., concurs.